UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION OF LONDON

| | |
|---|---|
| EAGLE MINING, LLC ) | |
| ) | Case No. 5:14-CV-00105-ART |
| Plaintiff ) | |
| ) | ELECTRONICALLY FILED |
| v. ) | |
| ) | |
| ELKLAND HOLDINGS, LLC ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO STAY OR, IN THE ALTERNATIVE, FOR AN ORDER
HOLDING ALL FURTHER ACTIONS REGARDING DEFENDANT'S
MOTION TO PARTIALLY VACATE OR MODIFY IN ABEYANCE**

Defendant Elkland Holdings, LLC ("Elkland"), in support of its Motion to Stay or, in the Alternative, for an Order Holding All Further Actions Regarding Defendant's Motion to Vacate in Abeyance ("Motion") and pursuant to Federal Arbitration Act, 9 U.S.C. § 12, states as follows:

**INTRODUCTION**

Elkland respectfully requests this Court either stay this action entirely until a final determination is reached in Case No. 2:14-cv-15043 (the "West Virginia Action"), filed before the United States District Court for the Southern District of West Virginia, or to order that all further action on Elkland's Motion to Partially Vacate and/or Modify Arbitration Award (Docket No. 21) (the "Kentucky Motion to Vacate or Modify") be held in abeyance pending resolution of Elkland's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or, in the Alternative, Motion to Transfer (the "Motion to Dismiss or Transfer") (Docket No. 15) filed before this Court.

Both Elkland and Eagle Mining, LLC ("Eagle") have filed competing motions in this action and in the West Virginia Action. In particular, Elkland filed with the West Virginia Court a Motion to Partially Vacate and/or Modify Arbitration Award (the "West Virginia Motion to Vacate or Modify") entered in the arbitration styled <u>In the Matter of: Arbitration Under Contract Mining Agreement Dated February 1, 2009 Between Eagle Mining, LLC and Elkland Holding, LLC</u>, AAA No. 55-198-86-13.

Elkland also filed a Motion to Dismiss or Transfer with this Court, arguing that the West Virginia Court is the proper venue for determination of whether the Award should be vacated and/or modified. (*See* Dkt. Nos. 15, 20.) However, on June 2, 2014, Eagle filed a motion to dismiss, stay or transfer Elkland's West Virginia Petition, both on procedural and substantive grounds. Eagle's motion lacks merit and Elkland believes it will properly be denied by the West Virginia Court. Out of an abundance of caution and without waiving its pending jurisdictional and venue objections, however, Elkland filed a Motion to Partially Vacate and/or Modify in this Court to ensure compliance with the FAA and to avoid a scenario whereby the West Virginia District Court dismissed Elkland's West Virginia Petition, and Eagle argued in this Court that no timely Motion to Vacate was filed in this forum. Again, Elkland believes that West Virginia is the proper forum to hear and decide its Petition, and filed its Motion to Vacate or Modify here only to ensure compliance with the FAA's deadline. *See* 9 U.S.C. § 12.

Section 12 of the Federal Arbitration Act allows a court to stay proceedings to confirm an arbitration award until final resolution of objections to the same award. *See* 9 U.S.C. § 12. The purpose of such a stay is to promote efficiency and avoid unnecessarily expending judicial resources, and to allow for objections to an arbitration award prior to the confirmation of the same. For these reasons, this Court should enter such a stay pending final resolution of the

claims set forth in the West Virginia Action. If the Court does not stay this action, Elkland requests the Court hold the Motion to Vacate or Modify in abeyance pending resolution of the Motion to Dismiss or Transfer to promote efficiency and conserve judicial resources should the Motion to Dismiss or Transfer later be granted by this Court.

## FACTS

Eagle and Elkland entered into a Contract Mining Agreement ("CMA") in February 2009 under which Eagle, as contractor, would mine certain coal reserves that Elkland leased in Boone County, West Virginia. For years, Eagle prepared and issued monthly invoices to Elkland, which Elkland paid. Subsequently, Eagle claimed that the hundreds of payments accepted by Eagle over the years were incorrect. Eagle initiated arbitration proceedings pursuant to the terms of the CMA, which required the hearing occur in Charleston, West Virginia. Following a chemical spill near the site of the arbitration hearing on the last business day before it was set to begin, the parties looked to other nearby locations to hold the hearing during the week set aside by all of the pertinent parties, and the parties eventually settled upon Lexington, Kentucky. After several days of proceedings in Lexington, the parties adjourned and the hearing ultimately concluded in Denver, Colorado.

One day after delivery of the Award, Eagle filed this action seeking confirmation of the same. Thereafter, Elkland filed its Petition initiating the West Virginia Action, as well as the Motion to Dismiss or Transfer in this Court, arguing not only that the Award should be vacated or at least modified in part, but also that the West Virginia Court is the proper venue for deciding the competing claims regarding the Award. The Motion to Dismiss or Transfer pending in this Court has been fully briefed.

## ARGUMENT

**A.      This Court Should Stay This Action Entirely, Pending Resolution of the West Virginia Action.**

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, ("FAA"), expressly contemplates a stay of proceedings to enforce an arbitration award when a motion to alter, amend or vacate that same award is pending.  *See* 9 U.S.C. § 12.  Although the FAA does not set forth factors to be considered when issuing the stay, any pending motion to alter, amend or vacate an arbitration award would directly affect proceedings to confirm that same award.  Specifically, a successful motion to alter, amend or vacate would either defeat or modify a motion to confirm that same award.  Thus, it follows that a motion to stay proceedings to confirm an award should be granted whenever a motion to alter, amend or vacate is pending.

Further, traditional factors considered by federal courts under motions to stay favor the grant of a stay in this instance.  Federal Rule of Civil Procedure 62 provides several general categories of potential stays, and the federal district and circuit courts look to the following factors when considering applications under Rule 62: (1) whether the stay applicant has made a strong showing that they are likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) whether a stay is in the public interest.  *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

All four factors weigh in favor of granting a stay in this instance.  First, Elkland has demonstrated a strong showing that it will be successful on the merits of the Motion to Dismiss or Transfer.  As described more fully in the Motion to Dismiss or Transfer and Elkland's Reply in further support of the same (Docket No. 20), Eagle has not established that this Court may exercise personal jurisdiction over Elkland.  Specifically, Eagle concedes that Elkland lacks

4

sufficient "continuous and systematic" contacts with Kentucky to establish general personal jurisdiction over Elkland, and instead claims that this Court may exercise specific personal jurisdiction over Elkland.  To establish specific personal jurisdiction, a plaintiff must demonstrate that each of three requirements are present: (i) that the defendant purposefully availed itself of the privilege of acting in Kentucky, or purposefully caused a consequence there; (ii) the cause of action arises from the defendant's actions in Kentucky; and (iii) the exercise of jurisdiction is reasonable.  *See Aristech Chem. Intern. Ltd. v. Acrylic Fabricators, Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998).  Eagle failed to meet this burden.

Regarding the first requirement, Eagle failed to prove that Elkland purposefully availed itself of Kentucky's laws, or that it purposefully caused a consequence in Kentucky.  For example, Elkland agreed to participate in the arbitration hearing in Kentucky in reaction to the unforeseen circumstances of the chemical spill in West Virginia.  Prior to that time, and throughout the life of the CMA, Elkland's intent was to operate and conduct business in West Virginia with Eagle, a West Virginia entity, and Elkland further believed that any dispute would be arbitrated in West Virginia as the parties contractually bargained-for.  Eagle failed to point to any case that raises a valid doubt as to this conclusion.

Similarly, Eagle failed to establish that the underlying breach-of-contract claims arose in Kentucky.  Throughout its briefing, Eagle refers several times to the location of its bank accounts and argues that the location of the missed payment is the location where the claim arises.  For example, Eagle relies upon *Conway v. Portfolio Recovery Associates, LLC*, Civil No. 13-07-GFVT, 2014 U.S. Dist. LEXIS 43281 (E.D. Ky. Mar. 31, 2014), where the Court concluded that a claim for breach-of-contract from a failure to pay a credit card balance arose at the location of the issuer of the credit card – i.e., where the injury occurred.  *Id*. at *19-20.  Not only does Eagle

5

ignore the Court's clear declaration that it was interpreting unclear Kentucky case law, it also ignores the differences between a credit card-based claim and the claims in this action, wherein Eagle asserted that hundreds of previously-accepted payments under the CMA were improperly calculated and insufficient. A similar issue was addressed in *Willits v. Peabody Coal Co.*, Case Nos. 98-5458, *et al.*, 1999 U.S. App. LEXIS 21095 (6th Cir. Sept. 1, 1999), in which the Sixth Circuit concluded that a breach-of-contract claim based upon an alleged miscalculation of royalties occurred where the calculation occurred. Similar to the royalty calculations in *Willits*, the calculations of the contract payments due to Eagle under the CMA necessarily occurred at Elkland's location in West Virginia, not Kentucky. Thus, Eagle's underlying claims actually arose in West Virginia, not Kentucky.

Regarding the third requirement, Eagle failed to prove that this Court's exercise of personal jurisdiction over Elkland is reasonable. Specifically, the parties, the CMA, the alleged breach, the mining operations, and the initial site of the arbitration were all set in West Virginia. Eagle cited only tenuous connections to Kentucky, largely resting on its own business decisions independent of Elkland and the CMA, and the fact that part of the arbitration was conducted in Kentucky due to an unforeseen chemical spill near the original arbitration site in West Virginia. These allegations do not point to an active and purposeful decision by Elkland to avail itself of Kentucky's laws. Further, Eagle's attempts to rely upon the brief time spent in Kentucky by the parties during the arbitration proceeding conflicts with the plain holding of the U.S. Supreme Court in *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 201 (2000) (holding that a willingness to arbitrate in an inconvenient forum does not mandate future court proceedings in that forum).

Second, Elkland also faces irreparable injury without a stay of this action. Specifically, Elkland could be deprived of the opportunity to challenge the Award. If Eagle is allowed to proceed with its confirmation and enforcement efforts, and those efforts are concluded before a decision is rendered on Elkland's West Virginia Petition and the Motion to Vacate or Modify, the Award could become an enforceable judgment without Eagle being afforded its right to contest the Award under the FAA.

Third, the issuance of a stay will not irreparably injure Eagle or any other party. Elkland has a right to seek to vacate and/or modify the Award under 9 U.S.C. §§ 10 and 11, or at the very least, the opportunity to present its arguments for such relief. A stay would not prevent Eagle from collecting a judgment should it be determined that the Award should be confirmed; rather, it allows Elkland to have its argument heard before any confirmation of the Award.

Finally, the public interest weighs in favor of a stay. Specifically, Elkland has the statutory right under the FAA to seek a partial vacation and modification of the Award, or at the very least the opportunity to present the reasons for its request for partial vacation and modification. The public has an undeniable interest in the enforcement of all federal statutes and the rights granted therein, and there is no public interest served by bypassing the logical order of procedures contemplated by the federal statutes.

**B.  In the Alternative, this Court Should Hold Further Action Regarding Elkland's Motion to Vacate in Abeyance Pending Resolution of Elkland's Motion to Dismiss or Transfer.**

As discussed above and in Elkland's pending Motion to Dismiss or Transfer, Elkland filed its West Virginia Petition and the West Virginia Motion to Vacate or Modify because (a) West Virginia is the appropriate venue for the relief requested by Elkland and (b) because it is required to do so within three months of service of the Award. Regarding the latter, 9 U.S.C. §

7

12 requires a party objecting to an arbitration award file those objections within three months of the filing or delivery of the arbitration award, and that notice of the same be filed upon the adverse party or their attorney. As discussed above, 9 U.S.C. § 12 also provides a mechanism for preventing enforcement of the arbitration award before any objection to the same can be heard – a stay of the confirmation proceedings pending a decision on the objections. *See id.*

Regardless, if the Court decides that a stay is not warranted in this instance, it should hold Elkland's Motion to Vacate or Modify in abeyance pending the resolution of its Motion to Dismiss or Transfer and/or Eagle's Motion to Dismiss the West Virginia action. Elkland has filed its Motion to Vacate or Modify with this Court solely to preserve its right to object to the Award in the unlikely event the West Virginia Action is dismissed. By filing the Motion to Vacate or Modify with this Court, Elkland does not waive or forego its arguments set forth in the Motion to Dismiss or Transfer, and the Motion to Vacate or Modify would be rendered moot should this Court stay the action *in toto* or grant the Motion to Dismiss or Transfer. Thus, granting a stay or holding Elkland's Motion to Vacate or Modify in abeyance would promote efficiency and preserve the resources of both the Court and the Parties while allowing Elkland the opportunity to preserve its right to object to the Award pursuant to 9 U.S.C. § 12.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Elkland's Motion to Stay and enter an order staying this entire action pending resolution of the West Virginia Action. In the alternative, this Court should enter an order holding further action on the Motion to Alter or Vacate in abeyance pending resolution of the Motion to Dismiss or Transfer and/or Eagle's Motion to Dismiss the West Virginia Action.

        Respectfully submitted,

        /s/  David A. Owen
        David. A. Owen
        Jason T. Ams
        Bingham Greenebaum Doll LLP
        300 W. Vine Street, Suite 1100
        Lexington, KY  40507
        Tel: (859) 231-8500
        Fax: (859) 255-2742
        Email:  dowen@bgdlegal.com
                jams@bgdlegal.com

        COUNSEL FOR DEFENDANT
        ELKLAND HOLDINGS, LLC

## **CERTIFICATE OF SERVICE**

   I hereby certify that on the 20th day of June, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

- **Gary W. Napier**
  gnapier@napierlawoffice.com
- **J. Scott Sexton**
  sexton@gentrylocke.com
- **Drayer B. Spurlock**
  dspurlock@napierlawoffice.com

              /s/  David A. Owen
              COUNSEL FOR DEFENDANT
              ELKLAND HOLDINGS, LLC