UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| EAGLE MINING, LLC, | ) |
| Plaintiff, | ) Civil No. 14-105-ART |
| v. | ) |
| ELKLAND HOLDINGS, LLC, | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

A company rescheduled an arbitration proceeding in Kentucky on short notice as a result of an unexpected environmental disaster. The company did not completely arbitrate its claims in Kentucky, and abruptly left the state without leaving behind any business related to the arbitration. Can a federal court in Kentucky review the ultimate arbitration award? *Should* the court do so? The peculiar circumstances giving rise to this case compel the Court to refrain from deciding the first question and to answer the second question in the negative.

## BACKGROUND

On January 9, 2014, a chemical leak from a storage tank contaminated the drinking water supply for over 300,000 people in Charleston, West Virginia.[1] But the damage did not stop there. The toxic release sickened residents of the city, and the resulting financial fallout pushed Freedom Industries, the tank owner, into bankruptcy proceedings.[2] The spill also had

---

[1] *See* Alexandra Berzon & Kris Maher, *West Va. Chem. Spill Site Avoided Broad Regulatory Scrutiny*, Wall St. J., Jan. 13, 2014, http://online.wsj.com/news/articles/SB10001424052702303819704579317062273564766.
[2] Kate White, *Freedom Industries Files for Bankruptcy*, CHARLESTON GAZETTE, Jan. 18, 2014, http://www.wvgazette.com/News/201401170030.

unexpected consequences for at least two other parties: Eagle Mining, LLC ("Eagle") and Elkland Holdings, LLC ("Elkland").

Eagle and Elkland had scheduled a multi-day arbitration to begin on January 13, 2014, in Charleston, pursuant to the dispute resolution provision of their Contract Mining Agreement ("CMA"). R. 1-1 at 31–32. After learning that the spill might deprive Charleston of potable water for several days, the parties scrambled to reschedule the arbitration elsewhere. R. 15-4 ¶ 12. After calling venues in nearby cities, the parties agreed to transfer their arbitration to a hotel in Lexington, Kentucky. *Id.* ¶ 14. Although the CMA required the parties to conduct their arbitration in Charleston, Eagle and Elkland proceeded with their new plan. R. 1-1 at 31.

On January 16, 2014, the parties started the arbitration proceeding. However, during the middle of the arbitration, Eagle and Elkland packed up and flew to Denver, Colorado, at the arbitrator's request. R. 15-4 ¶¶ 16–19. On January 29, 2014, the parties concluded the arbitration in Denver. *Id.* ¶ 19. On March 18, 2014, the arbitrator issued his award there. R. 1-3. The award required Elkland to pay damages to Eagle, and ordered Eagle to transfer certain mining permits to Elkland. R. 1-3 at 32–33. The very next day, Eagle filed a complaint in the Eastern District of Kentucky, asking this Court to enforce the award by issuing a judgment against Elkland. R. 1. Elkland moved to dismiss the complaint for lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case to the Southern District of West Virginia pursuant to either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a).[3] R. 15 at 1.

---

[3] Elkland makes a passing reference to Fed. R. Civ. P. 12(b)(6) in its motion to dismiss. *See* R. 15-1 at 1. A defendant may dismiss a complaint under this provision if the plaintiff fails to state a claim upon which relief can be

## DISCUSSION

A party must confirm or challenge an arbitration award in a court where venue is proper under either the Federal Arbitration Act ("FAA") or the general venue statute. *See* 9 U.S.C. § 9; 28 U.S.C. § 1391; *see also Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 195, 198 (2000).

Eagle and Elkland disagree about whether venue is proper in the Eastern District of Kentucky. But the Court need not resolve this issue to decide the case. Why? Because district courts may transfer a case to another court where the case could have been brought. *See* 28 U.S.C. § 1404(a); 28 U.S.C. § 1406(a). This is true whether or not venue or personal jurisdiction is appropriate in the original court. If the original court has personal jurisdiction and venue, the court may still transfer the case to another district court under § 1404(a); if the court has no personal jurisdiction or venue, it may transfer the case under § 1406(a). *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1989); *see also Flynn v. Greg Anthony Constr. Co., Inc.*, 95 F. App'x 726, 738 (6th Cir. 2003) (finding that a court may transfer a case under either § 1404(a) or § 1406(a)). Either way—whether the Court has personal jurisdiction and venue over Elkland or not—transfer is proper under both statutes. Because the Court can transfer or dismiss this case without deciding whether it has personal jurisdiction over Elkland, it will only evaluate whether transfer is proper under Elkland's alternative grounds for transfer. *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 494 (6th Cir. 2011) (holding that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them).

---

granted. *See* Fed. R. Civ. P. 12(b)(6). But a party must develop its argument "in a non-perfunctory manner" at the risk of waiving the argument entirely. *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007). Nowhere in its pleadings does Elkland discuss dismissal under Fed. R. Civ. P. 12(b)(6). Accordingly, Elkland waived that claim.

3

**I.     The Case Should Be Transferred Under Either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a).**

Whether transfer under § 1404(a) is appropriate depends on balancing several considerations.  A court should evaluate whether transfer will be convenient for the parties and witnesses and in the "interest of justice."  28 U.S.C. § 1404(a).  A transfer furthers the "interest of justice" where it promotes the "systemic integrity" and fairness of the judicial system and where the relevant activities and contacts appear predominantly in the target forum.  *Moses v. Bus. Card Exp. Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991); *Flynn*, 95 F. App'x at 741 (finding transfer to be appropriate when the "relevant activities and contacts" appeared in the target forum).  A court considering a transfer under § 1404(a) should also weigh the convenience of a proposed forum in light of the parties' expressed preference for that venue.  *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 538–39 (6th Cir. 2002) (concluding that a district court should consider the parties' forum-selection clause when determining whether to transfer a case).  Finally, a court may also consider the target forum's familiarity with the substantive law governing the matter.  *See In re Peregoy*, 885 F.2d 349, 351–52 (6th Cir. 1989).

A court must balance similar considerations when deciding whether to transfer a case pursuant to § 1406(a), and has broad discretion when doing so.  *Stanifer v. Brannan*, 564 F.3d 455, 456–57 (6th Cir. 2009).  Courts must examine the hardships and prejudice to the parties from dismissing the case when evaluating whether the "interest of justice" requires a transfer under § 1406(a).  *See Wallace v. Whitt*, 935 F.2d 271 (6th Cir. 1991).  Hardship exists where a defendant will have to incur the expense and inconvenience of refiling the same pleading in another forum.  *Roman v. Ashcroft*, 340 F.3d 314, 328–29 (6th Cir. 2003)

(interpreting the term "interest of justice" in 28 U.S.C. § 1631); *see also* 14D Charles Alan Wright et al., Federal Practice and Procedure § 3827 (4th ed. 2014) (explaining that transfer rather than dismissal is appropriate when it would be more efficient).

The facts of this case support transfer under both of these balancing tests. First, the CMA reflects the parties' intent to conduct arbitration in West Virginia. R. 1-1 at 31. This indicates that Eagle would not be inconvenienced by litigation in a West Virginia forum, since it was apparently willing to participate in an arbitration in that state. Although the CMA does not contain a forum-selection clause, the arbitration clause indicates the parties are comfortable with holding proceedings in West Virginia. R. 1-1 at 31. Moreover, the "relevant activities and contacts" in the litigation do not support retaining the case in a Kentucky court. *Flynn*, 95 F. App'x at 741. After all, the mine that is the subject of the CMA is located in West Virginia, and the arbitration proceedings simply pit-stopped in Kentucky on their way to Colorado. Indeed, but for a freakish industrial disaster, the arbitration would not have had any connection to Kentucky. Finally, the parties agreed that West Virginia law would govern the interpretation of the CMA. R. 1-1 at 33. As such, a West Virginia court would be more familiar with the substantive state law governing the underlying contract dispute. *In re Peregoy*, 885 F.2d at 351–52 (finding a transfer to a Texas court appropriate where Texas law governed the case).

Elkland will suffer hardship if the Court retains or dismisses the case because it has limited connections to the state. Elkland does not reside in or regularly conduct business in Kentucky. R. 15-5 ¶¶ 13–22 (Declaration of Keith I. Davis, Vice President of Elkland). A transfer will eliminate the hassle and expense that Elkland would incur to refile the case in

5

the desired forum. *Roman*, 340 F.3d at 328–29. The facts thus tip in favor of transferring the case to the United States District Court for the Southern District of West Virginia.

## II.     Venue is Proper in the Southern District of West Virginia.

In order for a transfer to be proper, the Southern District of West Virginia should have been able to hear the case originally. 28 U.S.C. §§ 1404(a), 1406(a). The Southern District of West Virginia could have heard the challenge to the arbitration award if venue was proper under 28 U.S.C. § 1391(b). Under this statute, venue is appropriate in the district where "any defendant resides." *Id.* § 1391(b)(1). Residence exists where a court can exercise personal jurisdiction over a defendant. *Id.* § (c)(2). A district court can exercise personal jurisdiction over a defendant subject to the state's long-arm statute. *See Handley v. Ind. & Mich. Elec. Co.*, 732 F.2d 1265, 1268–69 (6th Cir. 1984); *CFA Inst. v. Inst. Chartered Fin. Analysis of India*, 551 F.3d 285, 287–88 (4th Cir. 2009). The West Virginia long-arm statute reaches defendants who transact business in the state or own an interest in real property in the state. W. Va. Code R. § 56-3-33(a)(1), (a)(6) (2014). Elkland states that it is licensed to do business and owns property in West Virginia. R. 15-5 ¶¶ 8, 10 (Declaration of Keith I. Davis, Vice President of Elkland). Accordingly, the Southern District of West Virginia had personal jurisdiction over Elkland and was a proper venue to hear the challenge to the arbitration award.

## CONCLUSION

In light of the foregoing, this Court concludes that the interests of justice are best served by transferring this matter to the United States District Court for the Southern District of West Virginia.

Accordingly, it is **ORDERED** that the defendant's motion to transfer venue, R. 15, is **GRANTED**.  The defendant's motion to dismiss for lack of jurisdiction, R. 15, is **DENIED AS MOOT.**  The defendant's motion to vacate the arbitration award, R. 20, shall be **TRANSFERRED** to the United States District Court for the Southern District of West Virginia.

This the 14th day of July, 2014.

Signed By:
*Amul R. Thapar* AT
United States District Judge