IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

| | | |
|---|---|---|
| EAGLE MINING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:14-CV-22776 |
| | ) | Judge Thomas E. Johnston |
| ELKLAND HOLDINGS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| ELKLAND HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:14-CV-15043 |
| | ) | Judge Thomas E. Johnston |
| EAGLE MINING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STAY PROCEEDINGS**

Elkland Holdings, LLC ("Elkland"), by counsel, respectfully submits this Memorandum of Law in Support of its Motion to Stay Proceedings[1] ("Memorandum") and states as follows:

### I. INTRODUCTION

These proceedings arise out of a February 1, 2009 Contract Mining Agreement ("CMA") between Eagle Mining, LLC ("Eagle") and Elkland.  *See* **Exhibit A**, Complaint and attached

---

[1] On October 10, the Court, acting *sua sponte*, asked the parties to show cause why two companion cases, *Eagle Mining, LLC v. Elkland Holdings, LLC, et al.*, Case No. 2:14-cv-22776, and *Elkland Holdings, LLC v. Eagle Mining, LLC*, Case No. 2:14-cv-15043, should not be consolidated.  *See* Docket No. 46, Case No. 2:14-cv-22776; Docket No. 27, Case No. 2:14-cv-15043.  Elkland agrees that that the cases should be consolidated and filed a consent to that effect.  At the time of this filing, however, these cases remain separate.  Therefore, Elkland seeks to stay both cases and submits its motion and supporting memorandum in both cases.

exhibits in Case No. 2:14-cv-27210, at Exhibit 1.  Under the CMA, Eagle, the Contractor, mined certain coal from Elkland's Cook Mountain Reserves in Boone County, West Virginia.  *See id*.  Elkland paid Eagle on a per-ton basis for each ton of raw coal delivered to and accepted by Elkland.  *Id*.

On May 3, 2013, Eagle initiated an arbitration proceeding against Elkland before the American Arbitration Association ("AAA") styled In the Matter of:  Arbitration Under Contract Mining Agreement Dated February 1, 2009 Between Eagle Mining, LLC and Elkland Holdings, LLC, AAA No.: 55-198-86-13 (the "Arbitration").  *See* Complaint, Docket No. 1, Case No. 2:14-cv-22776, at ¶ 16; Exhibit 2 to Complaint, Docket No. 1-2, Case No. 2:14-cv-22776.  In relevant part, Eagle sought damages from Elkland, asserting that it had been underpaid for coal mined during the course of the contract (the "Base Price Adjustment Claim") and further asserting that Eagle lost profits when it was improperly prevented from mining in an area commonly referred to as the Twilight Reserves (the "Twilight Reserves Claim").

On March 18, 2014, the Arbitrator entered an Award ("Award") of $23,382,521 in Eagle's favor.  Relevant to this motion, the assessed damages on the Base Price Adjustment Claim were $14,190,774, while the assessed damages on the Twilight Reserves claim were $8,955,038.  Because the Twilight Reserves were never actually mined, there will be virtually no associated reclamation costs.

The day after the issuance of the Award, Eagle improperly moved to confirm the Award in the United States District Court for the Eastern District of Kentucky. That case was appropriately transferred to this Court (Case No. 2:14-cv-22776).  While Elkland's motion to dismiss and/or transfer Eagle's action in Kentucky was pending, Elkland filed a lawsuit in this Court to partially vacate and/or modify the Award (Case No. 2:14-cv-15043).

After the Award, and despite the fact that the Award related to separate contractual obligations and disputes, Eagle expressly disavowed its contractual reclamation obligations, informing Elkland that it has no intention of honoring its ongoing duties under the CMA. On October 23, 2014, Elkland filed a Complaint against Eagle in Case No. 2:14-cv-27210 (the "Reclamation Action") in this Court. *See* **Exhibit A**. As discussed in detail in the Complaint, Eagle breached the CMA by failing to 1) maintain necessary permits, 2) comply with all state, federal, and local laws and regulations, 3) abate conditions resulting in noncompliance with various state, federal, or local laws and regulations, 4) conduct reclamation activities, and 5) pay bond premiums. *Id*.

Even though Elkland exercised its rights under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*. ("FAA") and Fourth Circuit common law to challenge the erroneous Award,[2] Eagle contends that it has no continuing obligations under the CMA because Elkland has not paid the Award. *See* **Exhibit A**, at Exhibit 5 (noting that Elkland had "prevent[ed] Eagle's [continued] performance under the CMA"). Eagle's position is nonsensical. Eagle's reclamation obligations have nothing to do with the disputes at issue in the Award and challenged by Elkland in Case No. 2:14-cv-15043. Moreover, a substantial portion of the Award relates to the Twilight Reserves Claim, *i.e.,* mining that was never performed and, thus, has no connection whatsoever to Eagle's reclamation obligations.

---

[2] The Arbitrator exceeded his powers and/or imperfectly executed them, exhibited a manifest disregard of the law, failed to draw his Award from the essence of the parties' contract, and engaged in misbehavior. In the interest of imposing his own notions of economic justice, the Arbitrator even created facts out of whole cloth and rested key decisions on those facts. The Arbitrator created a legal standard that he imposed on what he gratuitously described as the "subsidiary of a dominant, old line coal company" and cited the testimony of a witness that did not testify (and does not even exist). The parties have briefed these issues. *See, e.g.,* Motion to Partially Vacate and/or Modify Arbitration Award, Docket No. 21, Case No. 2:14-CV-22776; Memorandum in Opposition to Plaintiff's Motion to Confirm Arbitration Award, Docket No. 49, Case No. 2:14-CV-22776.

Eagle claims it is financially unable to comply with its remaining contractual obligations. *See id.* (noting Eagle's "limited financial status" and that Eagle was "weakened…financially"); *see also id.* at Exhibit 4 ("Eagle is not in any financial condition to satisfy the remaining small tasks on this permit amendment, even if it desired to do so."); *id.* at Exhibit 7 (stating that "Eagle does not have funds available to pay for the reclamation work").

Eagle's claim of poverty should be viewed with great skepticism. Eagle was paid approximately $207 million for coal mined during the course of the CMA.[3]  At the arbitration hearing, evidence was received that Eagle was distributing money to its members and making loans to other entities owned or operated by its members, leaving Eagle under-capitalized. **Exhibit B**, Arbitration Hrg. Tr., pp. 3-57 through 3-62; 3-217 through 3-218.  Given Eagle's express repudiation of its reclamation obligations, Elkland has every reason to believe that Eagle will distribute any proceeds received from the Award, if confirmed in whole or in part (which Elkland denies would be appropriate), leaving Eagle under-capitalized, and that Eagle will continue to disclaim its reclamation obligations.

Eagle's continuing neglect and repudiation of its reclamation obligations has caused (and will continue to cause) significant financial consequences for Elkland.  At the end of the day, Elkland may be saddled with the burden and expense of fully reclaiming the Cook Mountain property.  At the time of this filing, Elkland believes the reclamation costs will exceed $19 million.

Separately, both Eagle and Elkland have been sued by Hanover Resources, LLC and Legacy Resources, LLC in Boone County, West Virginia (Case No. 14-C-152) in a mechanic's

---

[3] It is worth noting that the amount sought by Eagle in its Base Price Adjustment Claim – the claim that Elkland underpaid coal invoices during the course of the CMA – is approximately 6.8% of the total amount paid to Eagle.

lien case brought by some of Eagle's creditors arising out of Eagle's failure to pay for labor services in the approximate amount of $2.8 million (the "Mechanic's Lien Action"). *See* **Exhibit C**, Amended Complaint. Under the CMA, Eagle is responsible for bearing all costs associated with mining, including paying for labor, and is also responsible for defending and indemnifying Elkland from such lawsuits. Eagle has denied Elkland's tender and has refused to defend and indemnify Elkland. **Exhibit D**, September 18, 2014 Letter from Stephen Davis, Eagle, to Keith Davis, Elkland. Eagle will likely default on its obligations, and Elkland may ultimately be required to bear the costs of that lawsuit and/or any judgment entered in that case (again, which Elkland denies would be appropriate).

All proceedings concerning confirmation of the Award should be stayed until Eagle's current obligations to Elkland have been fully determined in both the Reclamation Action and the Mechanic's Lien Action. Eagle breached the CMA and, despite repeated notices from Elkland, maintains it has no intention of honoring its obligations under the CMA. Elkland expects to recover substantial damages in the Reclamation Action and has cross-claimed against Eagle in the Mechanic's Lien Action. Given Eagle's repeated representations that it is in severe financial distress, however, Elkland is doubtful it will be able to collect any judgment from Eagle. If this Court confirms the Award (Case No. 2:14-cv-22776) and reduces it to a judgment in Eagle's favor, Elkland may be forced to pay the Award (or some portion of it) to Eagle with no assurance that Elkland will be able to collect anything from Eagle in the Reclamation Action and the Mechanic's Lien Action.

Given that Eagle waited until after issuance of the Award to repudiate its obligations under the CMA, Elkland had no opportunity to raise Eagle's breach in the underlying Arbitration so as to obtain a set-off against the Award. Accordingly, Elkland requests that this Court stay these

proceedings pending a final determination in the Reclamation Action and the Mechanic's Lien Action, or, in the alternative, that the Court stay enforcement of any judgment entered in these proceedings pending a final determination in the Reclamation Action and the Mechanic's Lien Action.

## II.  ARGUMENT

A court has the inherent power to stay the proceedings on its docket.  *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *Hewlett-Packard Co. v. Helge Berg*, 61 F.3d 101, 105 (1st Cir. 1995).  The inherent authority to stay for prudential reasons is often exercised when a related proceeding is pending in another tribunal.  *Hewlett-Packard*, 61 F.3d at 105 (remanding to district court to consider stay in favor of arbitration); *see also Marquis v. FDIC*, 965 F.2d 1148, 1154-55 (1st Cir. 1992) ("beyond cavil" that federal courts "possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires such intervention" and remanding case for district court to consider stay in favor of federal administrative claims review process); *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir. 1977) (district court had authority to stay proceedings pending entry of final judgment in class action involving other district courts).

In determining whether a stay is warranted in a particular case, courts examine four factors: 1) the applicant's likelihood of success on the merits, 2) the injury to the applicant if the stay is denied, 3) the injury to other interested parties if the stay is granted, and 4) the public interest.  *See Nken v. Holder*, 585 F.3d 818, 821 (4th Cir. 2009) (noting this is the "traditional" four-factor test for issuing a stay).  Courts engage in a balancing of these factors, and if the costs of denying the applicant relief if he "ultimately prevails on the merits" exceed "the costs of granting interim relief, when the applicant eventually loses on the merits," a stay should be granted.  *See Illinois Bell Tel.*

6

*Co. v. WorldCom Techs., Inc.*, 157 F.3d 500, 503 (7th Cir. 1998). Therefore, "[w]hen the irreparable injury is great," the imposition of a stay may be warranted, even where "the probability of success is low, provided the costs... impose[d] on the adverse party are also low." *See Micro Data Sys., Inc. v. Nellcor Puritan Bennett, Inc*., 165 F.3d 1154, 1156 (7th Cir. 1999).

Here, all of the relevant factors—and certainly any balancing of these factors—weigh in favor of staying all proceedings in this matter.

First, there is a strong likelihood that Elkland will prevail against Eagle in the Reclamation Action. Eagle's reclamation obligations under the CMA are material and straightforward. Eagle acknowledged its obligations under the CMA, including its duties to maintain current permits and conduct reclamation activities. Eagle unequivocally repudiated those obligations, to Elkland's detriment, simply because Elkland exercised its rights under the FAA and the Fourth Circuit common law to vacate and/or modify the erroneous Award, which relates to different contractual obligations and disputes. Furthermore, it is Eagle's obligation under the CMA to pay for the cost of mining and to defend and indemnify Elkland from liens such as those asserted in the Mechanic's Lien Action. **Exhibit A**, at Exhibit 1, § 14(a).

Second, Elkland will be severely prejudiced if its Motion to Stay is denied. Eagle has made numerous representations to Elkland that it is insolvent or near insolvency. If this Court confirms the Award in whole or in part, there is great danger that Eagle and its representatives will disappear, and that Elkland will be unable to recover from Eagle when it obtains a judgment against Eagle in the Reclamation Action and the Mechanic's Lien Action. This prejudice is not a matter of serious dispute. After all, Eagle has expressly repudiated its reclamation and other obligations under the CMA.

<u>Third, Eagle will not be injured if these actions are stayed.</u>  By petitioning this Court to confirm the Award, Eagle seeks only monetary relief, and Eagle will not be damaged if payment of the Award is postponed.  *See Middleby Corp. v. Hussmann Corp*., 962 F.2d 614, 616 (7th Cir. 1992) ("As [the party seeking to confirm the arbitration award] seeks money, delay does not create irreparable injury.  Interest on the [arbitration award] will compensate [the party seeking confirmation] for the time value of the money").

<u>Fourth, the imposition of a stay would promote the public's interest.</u>  A final decision in Case No. 2:14-cv-27210 would promote judicial economy by enabling Eagle and Elkland to definitively identify and resolve their competing obligations. Moreover, the State of West Virginia and the general public benefit from the timely determination of Eagle's reclamation liability.

Thus, even if the Court finds that Elkland's probability of success is low, the injury to Elkland from confirmation of the Award is "sufficiently great" to conclude that a stay should be granted.  *See Illinois Bell*, 157 F.3d at 503.  Similarly, the costs to Eagle of a stay are likewise low enough to justify a stay even in the absence of a strong likelihood that Elkland will prevail on the merits (though Elkland believes there is a strong likelihood that it will prevail).  *See Micro Data Sys.*, 165 F.3d at 1156.

Additionally, the circumstances here are nearly identical to the situation in *Hewlett-Packard*, 61 F.3d at 105, where the court found that "prudential reasons" favored staying a confirmation proceeding in favor of a concurrent arbitration.  *Hewlett-Packard* involved disputes arising out of two separate distributorship agreements between the same two parties.  *Id.* at 102-03.  Both the agreements had arbitration clauses.  *Id*.  Resolution of the parties' disputes was originally sought in a single arbitration proceeding, but two separate arbitrations—one each to determine rights and obligations under each of the separate distributorship agreements—were

8

actually conducted. *Id*. at 103. When an award was entered in the first arbitration, the losing party sought to stay confirmation of the award pending the outcome of another proceeding. *Id*. The district court denied the motion to stay and granted the winning party's motion to confirm the award on the grounds that it saw no express authority to enter a stay of confirmation. *Id*. The First Circuit Court of Appeals disagreed, holding that district courts do indeed have discretion to stay confirmation of an arbitration award particularly if prudential reasons, such as the pendency of related litigation which could affect the award, dictated such. *Id*. at 105-06; *see also Korea Wheel Corp. v. JCA Corp.*, No. C05-1590C, 2005 WL 3454335, at *1-2 (W.D. Wash. Dec. 16, 2005) (stay of confirmation proceeding on award for unpaid invoices pending "resolution of [losing party's] damages claim" concerning allegedly defective condition of product was warranted).

The First Circuit in *Hewlett-Packard* specifically found that the losing party had "a very substantial prudential argument," as "[i]f the existing award were confirmed in full and reduced to judgment, [the losing party] would have to pay the full award to the defendants as successors-in-interest of an insolvent company." *Id*. at 105. Thus, if the losing party "then prevailed on its claims against the insolvent company on a closely related transaction, it would have no assurance of collecting anything." *Id*. Additionally, the First Circuit noted that the losing party could not be blamed for "the discrepant timing in the resolution of its claim," as it made a "reasonable effort" to have all claims resolved in one proceeding. *Id*.

As in *Hewlett-Packard*, "prudential" considerations in this case weigh heavily in favor of a stay. Eagle has repeatedly drawn Elkland's attention to its tenuous financial condition, and it is unlikely that Elkland will be able to collect on any judgment obtained in the Reclamation Action or the Mechanic's Lien Action. Staying these confirmation/vacatur proceedings until a final determination in those other actions will enable Elkland to offset any amount that the Court could

9

determine is owed to Eagle relating to the Award against Elkland's recoveries in the Reclamation and Mechanic's Lien Actions. Additionally, Eagle should not be permitted to benefit from its decision to repudiate its reclamation and other CMA obligations immediately following the entry of the Award in its favor. ***As alleged in the Reclamation Action, Eagle's breaches of the CMA did not occur until after the arbitration in January of this year***. As such, Elkland could not have asserted them in the arbitration, and Elkland cannot be blamed for any alleged "discrepant timing" in asserting its claims.

Alternatively, and only if the Court declines to stay these actions and rules in favor of Eagle (which Elkland denies would be appropriate), Elkland requests that this Court defer entering judgment until the resolution of the Reclamation and Mechanic's Lien Actions. *See Middleby Corp.*, 962 F.2d at 617 (affirming district court's order confirming arbitration award in favor of seller of business and against purchaser of business, but declining to enter judgment until the conclusion of a pending lawsuit brought by purchaser against seller); *Companhia de Navegacao Maritima Netumar v. Armada Parcel Service*, No. 96 Civ. 6441, 1997 WL 16663, at *7 (S.D.N.Y. Jan. 17, 1997) (confirming arbitration award, but staying enforcement of award pending arbitration for claims for set-off and other unresolved claims). "A stay of execution is proper upon a showing that an immediate enforcement of the judgment will result in unnecessary hardship to the judgment debtor." *Ministry of Def. and Support for the Armed Forces of the Islamic Repub. of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1100 (9th Cir. 2011) (quoting 30 Am.Jur.2d *Executions* § 314 (2011)).

Since a favorable resolution in the Reclamation Action and/or the Mechanic's Lien Action could significantly reduce, if not eliminate, Elkland's liability, if any, to Eagle, and since it is unlikely that Elkland will be able to recover from Eagle if Elkland obtains a judgment against

10

Eagle in the Reclamation Action and/or the Mechanic's Lien Action, a stay in the entry or execution of any judgment confirming the Award is appropriate.

### III. CONCLUSION

For the above reasons, Elkland respectfully requests that the Court enter an order staying these proceedings until a final determination is reached in the Reclamation Action and the Mechanic's Lien Action or, in the alternative, staying the entry or execution of any judgment entered in these proceedings until a final determination is reached in those other cases.

Respectfully submitted,

*/s/ John H. Tinney, Jr.*
John H. Tinney, Jr. (WV No. 6970)
John K. Cecil (WV No. 9155)
THE TINNEY LAW FIRM, PLLC
5 Greenbrier Street
Charleston, WV 25311
Phone: (304) 720-3310
Fax: (304) 720-3315
jacktinney@tinneylawfirm.com
jcecil@tinneylawfirm.com

THOMPSON COBURN LLP
Roman P. Wuller (admitted *pro hac vice*)
Christopher M. Hohn (admitted *pro hac vice*)
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6000
(314) 552-7000 Fax
rwuller@thompsoncoburn.com
chohn@thompsoncoburn.com

*Attorneys for Elkland Holdings, LLC*

11

## **CERTIFICATE OF SERVICE**

       I certify that on the 29th day of October, 2014, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system:

Gregory Joseph Haley
J. Scott Sexton
GENTRY LOCKE RAKES & MOORE
haley@gentrylocke.com
sexton@gentrylocke.com

James S. Crockett , Jr.
SPILMAN THOMAS & BATTLE
jcrockett@spilmanlaw.com

                                                       */s/ John H. Tinney, Jr.*
                                        *An Attorney for Elkland Holdings, LLC*